IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| EUGENE WALDEN, III, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 5:21-cv-304 (MTT) |
| | ) |
| GINA M. RAIMONDO, et al., | ) |
| | ) |
| Defendants. | ) |

## ORDER

Defendant Gina Raimondo, United States Secretary of Commerce, moves to dismiss plaintiff Eugene Walden's second and third amended complaints. Docs. 46; 56. For the following reasons, Raimondo's motions (Docs. 46; 56) are **GRANTED in part** and **DENIED in part**.

### I. BACKGROUND

**A. Factual Background**[1]

In December 2009, Walden, a black male, applied to work for the 2010 Decennial Census. Docs. 30-11; 53 ¶ 29. On December 29, 2009, the United States Department of Commerce ("DOC") informed him that the United States Census Bureau "processes all applicants for temporary census jobs through a pre-appointment name check against the Federal Bureau of Investigation (FBI) Criminal Justice Information Services Division's criminal file" and his "resulted in a tentative match between [him] and an

---

[1] These facts come from Walden's second and third amended complaints, and the exhibits referenced in those complaints. Docs. 40; 53; *Varnes v. Loc. 91, Glass Bottle Blowers Ass'n of U.S. and Can.*, 674 F.2d 1365, 1370 n.6 (11th Cir. 1982) ("As a general rule, an amended complaint supersedes and replaces the original complaint unless the amendment specifically refers to or adopts the earlier pleading.").

arrest record in the FBI criminal history index." Doc. 30-11.  The letter instructed him to either send the documentation of his arrest or, if he disputed the record, provide fingerprints.  *Id*.  Walden responded on January 20, 2010, informing the Census Bureau that he was never charged with a felony.  Doc. 30-3.  However, Walden was arrested for a misdemeanor in January 2010 by Jones County Deputy Sheriff Beard.  Docs. 23 at 3; 53 ¶ 43.  He alleges he was "initially excluded from two jobs: Field Enumerator and Geographic Specialist, based upon old (over 10 years old) criminal arrest records."  Doc. 53 ¶ 29.

On March 4, 2010, the Census Bureau informed Walden that based on his "fingerprint card or disposition information," he was "available for hire" and to attend training.  Docs. 30-12; 53 ¶ 33.  The Census Bureau also stated: "We apologize for any inconvenience this matter may have caused you.  However, because Census Bureau workers are in direct contact with the public, it is necessary to take extra measures to ensure that these employees are competent, dependable, and honest."  Doc. 30-12.

Walden attended training with instructor Melton from April 27, 2010 to April 30, 2010.  Doc. 53 ¶¶ 42, 45.  On the first day, Walden "was compelled to self-report his entire criminal background that included his most recent misdemeanor arrest on" United States Office of Personnel Management form 306.  *Id*.

On April 30, 2010—Walden's last day of training—Beard, the same officer who arrested Walden, spoke at the training and "[d]irected [the class] to write down [their] automobile tag numbers for the Jones County Sheriff Department."  *Id*. ¶ 45.  He then "informed the class there were always two deputies in the immediate area" and said:

> 'They (Jones County Sheriff's Department) do not allow riff raff from
> Macon coming over causing problems.  They try to make a reputation for

themselves.' He also said he has a black car that he drives around in at night with the lights out. 'They don't come out because we have a presence.' 'You actually talk to people in these houses?'

*Id*. ¶ 47. Beard is a white male and "was aware of [Walden's] race and criminal background." *Id*. ¶ 45. Melton also "comment[ed]: 'Generally, if you see white folks in this area, they are buying drugs. You are looking for what does not fit … 'They look halfway respectable.' 'This is not profiling.'" *Id*. ¶ 46. Following this training, Walden attempted to file a grievance with the Macon Field Office regarding Melton's and Beard's comments. *Id*. ¶¶ 48, 50-51.

Walden worked as a Field Enumerator in Jones County from May 3, 2010 to May 4, 2010. *Id*. ¶ 55. On May 4, 2010, he "was followed by a Jones County Sheriff department cruiser" and he received two letters dated April 30, 2010 from the DOC regarding his arrest record. *Id*. ¶¶ 16, 56-57. The first letter "notified [him] that [he] had been placed in a 'non-working status'":

> The Census Bureau has a policy of submitting all hires for temporary employment to a criminal background check against the Federal Bureau of Investigation (FBI) Criminal Justice Information Services Division's criminal file. Additionally, Census reviews Optional Form (OF) 306, completed at the time of hire, for self-disclosure of any criminal activity in your past. Either the fingerprint check resulted in a positive match between your fingerprints and an arrest record in the FBI criminal history Index, or information disclosed on the OF 306 needs further review.

Docs. 30-13; 53 ¶¶ 16, 58. The second letter informed him he was terminated:

> We have reviewed your fingerprint record from the FBI criminal history database, as well as past criminal history information disclosed on the Optional Form (OF) 306 you completed at hire. Based on the nature of the facts disclosed, we were not able to make a favorable determination regarding your continued employment. Your employment with the Census Bureau is terminated effective immediately.

Docs. 30-14; 53 ¶¶ 16, 58.  Neither the Macon Field Office Supervisor nor Melton was involved in Walden's termination.  Doc. 30-9.  Walden further alleges that, as a result of his termination, he "has been … barred from public service employment [and] federal, state, and private professional contract employment," he "continues to sustain mental and emotional costs, financial losses, [and] psychological and emotional damages," and he "was also excluded from consideration for employment with the 2020 Decennial Census."  Docs. 40 ¶ 16; 53 ¶ 12.

Walden alleges Title VII disparate treatment and disparate impact claims based on his termination; a Title VII retaliation claim based on his attempt to file a grievance regarding Melton's and Beard's comments; and Fifth Amendment due process claims against Raimondo, the DOC, the Decennial Census, United States Attorney General Merrick Garland, and the United States Department of Justice ("DOJ").[2]  Doc. 53 ¶¶ 7, 10, 102.  Raimondo moves to dismiss all Walden's claims.  Docs. 46; 56.

**B. Procedural History**

A class action challenging the DOC's practice of excluding individuals from employment based on criminal history during the 2010 Census was filed in the Southern District of New York on April 13, 2010.  Doc. 53 ¶¶ 34, 59-60 (citing *Gonzalez v. Pritzker*, No. 1:10-cv-03105-FM (S.D. N.Y. Apr. 13, 2010)).  Walden opted out of that action and individually filed an Equal Employment Opportunity Commission ("EEOC")

---

[2] Walden references the Fourth, Tenth, and Thirteenth Amendments, but he does not allege claims under those amendments, nor could he.  Doc. 53 ¶ 2.  He also cites the Fourteenth Amendment in support of an equal protection claim.  *Id*. ¶ 77.  But the Fourteenth Amendment only applies to the states—an equal protection claim against a federal defendant arises under the Fifth Amendment's due process clause.  U.S. Const. Amend. XIV, § 1; *Herederos De Roberto Cabrera, LLC v. Teck Res. Ltd.*, 43 F.4th 1303, 1307 (11th Cir. 2022) ("[T]he relevant constitutional provision … is the Fifth Amendment's Due Process Clause, which applies to the federal government and its courts, not the Fourteenth's, which applies to the states."); *United States v. Johnson*, 981 F.3d 1171, 1191 (11th Cir. 2020) ("[T]he Fifth Amendment's guarantee of due process under the law embodies within it the concept of equal justice under the law.").

complaint with the DOC.  Docs. 1-2 at 1; 46-2; 53 ¶ 64.  He alleged that his race, age, and place of birth played a role in his termination, specifically citing, *inter alia*, the criminal background check and the comments made by Melton and Beard at training.  Doc. 46-2 at 2-16.  He also alleged his termination was "retaliation for previous civil rights work with the economically and mentally challenged citizens."  *Id*. at 2.  The DOC accepted for investigation his claim for discrimination but dismissed his retaliation claim.  Doc. 46-3 at 1.  The DOC issued a notice of final order on May 25, 2021, stating it did not find evidence of discrimination.  Docs. 1-2; 53 ¶ 100.

Walden sued Raimondo on August 20, 2021.  Doc. 1.  Because Walden failed to properly serve Raimondo, the Court dismissed Walden's complaint without prejudice.  Doc. 7.  The Court then vacated that order of dismissal after Walden provided evidence that he made good faith efforts to serve.  Doc. 10.  On September 28, 2022, the Court granted Walden's motion to amend.  Docs. 12; 14.  That same day, Walden served Raimondo—over a year after he filed suit—before he filed his first amended complaint.  Doc. 15.  Raimondo then moved for a more definite statement.  Doc. 16.  The Court ordered Walden to respond to that motion, or, in the alternative, file his amended complaint.  Doc. 17.  In response, Walden filed (1) a response, (2) a second proposed amended complaint, (3) a second motion to amend his complaint, and (4) his first amended complaint, naming the DOC and the Decennial Census as additional defendants.  Docs. 18; 22; 23.  Raimondo moved to dismiss Walden's first amended complaint, which the Court denied on April 25, 2023 because of deficiencies in Raimondo's motion.  Docs. 24; 31.

On May 9, 2023—almost two years into the case—Raimondo filed her answer. Doc. 32. On June 8, 2023, Walden again moved to amend his complaint. Doc. 33. The Court held a scheduling conference with the parties that day, setting a December 5, 2023 discovery deadline. Docs. 34; 35. On July 12, 2023, the Court granted Walden's unopposed motion to amend and ordered Walden to file his second amended complaint. Doc. 38. Walden did not file his second amended complaint until August 7, 2023, naming Garland and the DOJ as additional defendants. Doc. 40.

Raimondo moved to dismiss Walden's second amended complaint on September 5, 2023. Doc. 46. In addition to a response, Walden again moved to amend his complaint. Docs. 48; 48-1. The Court granted Walden leave to amend because he had a right as a matter of course under Federal Rule of Civil Procedure 15(a)(1)(B), but noted that "it [did] not appear that Walden's third amended complaint" mooted Raimondo's motion to dismiss Walden's second amended complaint. Doc. 49. Walden filed his third amended complaint on October 10, 2023. Doc. 53.

Raimondo moved to dismiss Walden's third amended complaint on October 23, 2023, incorporating her arguments from her previous motion to dismiss and arguing it "is subject to dismissal for the same reasons articulated before." Doc. 56. Walden responded to that motion[3] and, for the fourth time, moved to amend his complaint. Docs. 52; 58.

---

[3] The Court notes that Walden's response contains little to no argument in response to Raimondo's motion. Doc. 52. It simply restates the motion to dismiss standard and statements contained in his complaints. *Id*.

## II. STANDARD

The Federal Rules of Civil Procedure require that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To avoid dismissal pursuant to Rule12(b)(6), "a complaint must contain sufficient factual matter … to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when "the court [can] draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "Factual allegations that are 'merely consistent with a defendant's liability' fall short of being facially plausible." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678).

At the motion to dismiss stage, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *FindWhat Inv. Grp. v. FindWhat.com.*, 658 F.3d 1282, 1296 (11th Cir. 2011) (quoting *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1261 (11th Cir. 2006)). But "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002). The complaint must "give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. Where there are dispositive issues of law, a court may dismiss a claim regardless of the alleged facts. *Patel v. Specialized Loan Servicing, LLC*, 904 F.3d 1314, 1321 (11th Cir. 2018).

### III. DISCUSSION

**A. Failure to Exhaust (Retaliation, Geographical Specialist, and 2020 Census)**

Raimondo argues Walden's claims based on retaliation, the geographical specialist position, and the 2020 Census[4] should be dismissed for failure to exhaust administrative remedies. Doc. 46-1 at 11-13, 13 n.12, 16 n.15. The Court agrees.

Claims in a subsequent lawsuit are typically limited to the scope of the EEO charge. *Gregory v. Ga. Dep't of Human Res.*, 355 F.3d 1277, 1280 (11th Cir. 2004). While claims that "'amplify, clarify, or more clearly focus' the allegations in the EEOC complaint" are allowed, "allegations of new acts of discrimination are inappropriate." *Id.* at 1279-80 (quoting *Wu v. Thomas*, 863 F.2d 1543, 1547 (11th Cir. 1989)). However, "'the scope of an EEOC complaint should not be strictly interpreted,'" and courts should be "'extremely reluctant to allow procedural technicalities to bar claims.'" *Id.* at 1280 (quoting *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 460-61, 465 (5th Cir. 1970)). "As long as allegations in the judicial complaint and proof are 'reasonably related' to charges in the administrative filing and 'no material differences' between them exist, the court will entertain them." *Ray v. Freeman*, 626 F.2d 439, 443 (5th Cir. 1980) (quoting *Danner v. Phillips Petroleum Co.*, 447 F.2d 159, 162 (5th Cir. 1971)).[5]

Walden alleges his termination was "in retaliation for attempting to file an employee grievance." Doc. 53 ¶¶ 10, 93. The Court agrees with Raimondo that Walden failed to exhaust this claim because he did not raise retaliation based on his

---

[4] Although it is unclear whether Walden asserts a claim based on the 2020 Census, the Court will assume, as Raimondo argues, that he does.

[5] The Eleventh Circuit has adopted as binding precedent the decisions of the former Fifth Circuit rendered prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

attempt to file a grievance in his EEOC complaint.  Rather, the retaliation claim in his EEOC complaint was based on his "previous civil rights work."  Doc. 46-2 at 2.  No claim in his EEOC complaint relates to retaliation for attempting to file a grievance.  *See id.*  Thus, this claim is not "reasonably related" to his claims of discrimination, and it is therefore subject to dismissal based on exhaustion.  *Ray*, 626 F.2d at 443.

Additionally, because Walden's presumed claims regarding the 2020 Census concern federal employment, he was required to first contact an EEOC "Counselor within 45 days of the date" he was excluded from employment.  29 C.F.R. § 1614.105(a).  Walden did not allege that he filed a second EEOC complaint.  *See* Doc. 53 ¶ 100.  Obviously, his 2010 EEOC complaint cannot be the basis for exhaustion of claims arising from the 2020 Census.  *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) ("[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges.  Each discrete discriminatory act starts a new clock for filing charges alleging that act.").

Finally, Walden has also failed to exhaust his claims based on exclusion from the geographical specialist role.  Walden's EEOC complaint addresses conduct that concerned his employment as a field enumerator in 2010.  *See generally* Doc. 46-2.  He makes no mention of the geographical specialist position.  *See generally id*.  Thus, this claim is not "reasonably related" to and is materially different from his claims in his EEOC complaint.

Accordingly, his retaliation claim, claims based on the 2020 Census, and claims regarding the geographical specialist position are **DISMISSED** for failure to exhaust.

**B. Title VII**

Raimondo moves to dismiss Walden's Title VII disparate treatment and disparate impact claims for failure to state a claim.  Doc. 46-1 at 13-18.

*1. Disparate Impact*

Walden alleges that the Census Bureau's policy of excluding individuals from employment based on criminal history during the 2010 Census had a disparate impact on black males in violation of Title VII.[6]  Doc. 53 ¶¶ 73-75, 102.

The Title VII "disparate impact theory prohibits *neutral* employment practices which, while non-discriminatory on their face, visit an adverse, disproportionate impact on a statutorily-protected group."  *E.E.O.C. v. Joe's Stone Crab, Inc.*, 220 F.3d 1263, 1274 (11th Cir. 2000); 42 U.S.C. § 2000e-2(k).  A Title VII disparate impact claim has three elements: (1) "a significant statistical disparity between the proportion of [members of a protected class] in the available labor pool and the proportion of [those individuals]" employed, (2) "a specific, facially-neutral, employment practice which is the alleged cause of the disparity," and (3) "a causal nexus … between the specific employment practice and the statistical disparity shown."  *Joe's Stone Crab, Inc.*, 220 F.3d at 1274-75; *Woods v. Lockheed Martin Corp.*, 2022 WL 2972852, at *3 (11th Cir. July 27, 2022).

Raimondo argues Walden's disparate impact claim is subject to dismissal because his references to the class action are insufficient to allege "a significant statistical disparity."  Docs. 46-1 at 17; 55 at 7.  True, but liberally construing Walden's

---

[6] The Court notes that disparate impact is mentioned in 42 U.S.C. § 2000e-2(k) and not in 42 U.S.C. § 2000e-16, the federal sector provision of Title VII.  Raimondo does not argue that a disparate impact claim is not cognizable against a federal agency.  The Court addresses only the arguments Raimondo advances.

complaint—as the Court must—Walden sufficiently alleges that during the 2010 Census, the DOC had a "facially-neutral employment practice" of excluding and/or terminating individuals from employment based on criminal history and that this practice had an adverse, disproportionate impact on black males. Doc. 53 ¶¶ 5, 16, 29, 43, 45, 69-71, 74-75, 81. He specifically states that "because disproportionate numbers of African Americans and Hispanics are arrested, the use of arrest records to make employment decisions is likely to have a substantial disparate impact on those groups" and cites statistics stating that 16.6% of black adult males have been imprisoned as compared to 2.6% of white adult males. *Id*. ¶¶ 70, 75.

Thus, the Court does not find convincing Raimondo's argument that Walden has failed to state a claim because he did not allege the exact statistical disparity. Docs. 46-1 at 17-18; 55 at 7. This is understandable—that information becomes available during discovery, not prior to Walden filing suit. *See Phelps v. Lee Cnty., Fla.*, 2021 WL 5826235, at *5 (M.D. Fla. Dec. 8, 2021) ("Pending before the Court is a motion to dismiss, not a motion for summary judgment. Requiring evidence of disparate impact before discovery has commenced would effectively preclude any plaintiff without access to the records … from having his day in court. Such a requirement would do little more than reward the enormous information asymmetry between employer and applicant, stacking the decks against potential plaintiffs."); *Pritchard v. Fla. High Sch. Athletic Ass'n, Inc.*, 2019 WL 1993511, at *5 (M.D. Fla. May 6, 2019) ("[W]hile statistical evidence is necessary to *prevail* on a disparate impact claim, it is not required to survive a motion to dismiss at the pleading stage."); *Hall v. Dolgencorp, LLC*, 2020 WL 7388649, at *5 (N.D. Ala. Dec. 16, 2020) ("It is unreasonable and contrary to pleading

standards to expect [the plaintiff] to be able to allege statistical data in her complaint concerning the impact of [defendant's] policy on pregnant women.  It is sufficient that [the plaintiff] alleged that a facially neutral policy has a disproportionate impact on a protected class, which she has done.").

In any event, a plaintiff will survive a motion to dismiss as long he has "set out enough factual content to allow a court to draw the reasonable inference that" the defendant is liable for the alleged discrimination.  *EEOC v. Catastophe Mgmt. Sols.*, 852 F.3d 1018, 1023 (11th Cir. 2016) (cleaned up); *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002); *McCone v. Pitney Bowes, Inc.*, 582 F. App'x 798, 801 (11th Cir. 2014).  Walden has done so here.  Accordingly, his disparate impact claim is not subject to dismissal.

*2. Disparate Treatment*

Under Title VII's federal-sector provision, "[a]ll personnel actions affecting employees or applicants for employment … in executive agencies … shall be made free from any discrimination based on race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-16(a).  A plaintiff seeking to bring discrimination claims under this provision need only show that certain personnel actions were "'tainted by differential treatment based on' a protected characteristic*."  Babb v. Sec'y of Dep't of Vet. Affs.*, 992 F.3d 1193, 1199 (11th Cir. 2021) (quoting *Babb v. Wilkie*, 140 S.Ct. 1168, 1174 (2020)).

Walden's disparate treatment claim is difficult to decipher.  He states: "Employer's disparate treatment of the Plaintiff for engaging in protected activities as well as the Plaintiff [sic] on-going policies, procedures, and practices that had a disparate impact[] upon the Plaintiff."  Doc. 53 ¶ 102.  The first part of this allegation

suggests a retaliation claim and the second suggests a disparate impact claim, both of which the Court has already addressed.  And if Walden's disparate treatment claim is based on Melton's and Beard's allegedly discriminatory comments made at training, that claim fails—neither Melton nor Beard was the decisionmaker and Walden does not allege they played any role in his termination.  Docs. 30-9; 30-13; 30-14; see *Walker v. Prudential Prop. and Cas. Ins. Co.*, 286 F.3d 1270, 1274 (11th Cir. 2002) ("When evaluating a charge of employment discrimination, then, we must focus on the actual knowledge and actions of the decision-maker.").  Rather, he alleges the DOC fired him based on his arrest record, which, as discussed, was a consequence of a race-neutral practice.  Docs. 30-13; 30-14.  Accordingly, Walden has not plausibly alleged a Title VII disparate treatment claim and that claim is **DISMISSED**.

**C. Fifth Amendment Due Process**

Walden alleges the DOC's "actions and inactions" violated his Fifth Amendment rights.  Doc. 53 ¶¶ 7, 9-10, 102.  Raimondo states Walden's complaint "could conceivably allege violations of the Equal Protection Clause of the Fourteenth Amendment," but "no independent cause of action under the Fourteenth Amendment should be considered separate and apart from [Walden's] Title VII claim(s)" and thus construing Walden's complaint to state a Fourteenth Amendment claim under *Bivens* "would be unnecessary."  Doc. 46-1 at 3 n.4 (citing a 42 U.S.C. § 1983 case holding that "a claim under the Fourteenth Amendment would be governed by the same standards as a claim under Title VII").  She further states: "In the event the Court disagrees with this reading of the law on this issue, the Agency asks for leave to more fully brief this issue."  *Id*.

The Court *does* disagree, at least in a technical sense, "with this reading of the law." Although Walden did not cite the Fifth Amendment in his second amended complaint, Raimondo presumably knows the Fourteenth Amendment applies to the states, not the federal government. But Walden's broader point is well taken.

*Bivens*[7] claims have been recognized by the Supreme Court in only three contexts: under the Fourth Amendment for an unreasonable seizure arising from a warrantless arrest of a man in his home, *Bivens*, 403 U.S. at 396; under the Fifth Amendment's due process clause for gender discrimination arising from the termination of a congressional aide, *Davis v. Passman*, 442 U.S. 228, 248-49 (1979); and under the Eighth Amendment's cruel and unusual punishment clause arising from the failure to provide medical care to a prisoner, *Carlson v. Green*, 446 U.S. 14, 16-18 (1980). "These three cases—*Bivens*, *Davis*, and *Carlson*—represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1855 (2017). Since those cases were decided, the Supreme Court has "made clear that expanding the *Bivens* remedy is now a 'disfavored' judicial activity." *Id.* at 1857 (collecting cases).

Determining the viability of a *Bivens* claim requires a "two-step inquiry." *Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020). First, the court must ask whether the claim "arises in a 'new context' or involves a 'new category of defendants'" different from those in *Bivens*, *Davis*, or *Carlson*. *Id.* (quoting *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 68 (2001)). The answer is almost always yes because a context is "new" if a claim

---

[7] In *Bivens v. Six Unknown Fed. Narcotics Agents*, the Supreme Court found that there is an implied right of action arising directly under the Constitution for damages against federal officers, in limited situations, when a plaintiff's constitutional rights have been violated by a federal officer acting under the color of federal law. 403 U.S. 388, 389 (1971).

differs in any "meaningful way … even if it is based on the same constitutional provision" as the claims in those cases.  *Id.*  For example, a case might differ in a meaningful way "because of the rank of the officers involved" or because of "the generality or specificity of the official action."  *Abbasi*, 137 S. Ct. at 1860.  When a case arises in a new context, the court "must proceed to the next step and ask whether there are factors that counsel" against implying a *Bivens* remedy in such a context.  *Hernandez*, 140 S. Ct. at 744.  "[T]o be a 'special factor counselling hesitation,' a factor must cause a court to hesitate before answering that question in the affirmative."  *Abbasi*, 137 S. Ct. at 1858.

Although Walden's Fifth Amendment claim "is based on the same constitutional provision" as the claim in *Davis*, the Eleventh Circuit has held that the Civil Service Reform Act ("CSRA") "is a special factor counseling against recognition of" "job-related *Bivens* actions by federal employees."  *Lee v. Hughes*, 145 F.3d 1272, 1276-77 (11th Cir. 1998) ("[T]he *Davis* Court did not consider the effect of the CSRA on Davis's *Bivens* claim because the CSRA had been enacted immediately prior to the ruling and the preemptive effect of the Act was not an issue before the Court."); *Stephens v. Dep't of Health and Hum. Servs.*, 901 F.2d 1571, 1577 (11th Cir. 1990).

Accordingly, Walden's Fifth Amendment claim is **DISMISSED**.

### IV. CONCLUSION

For the foregoing reasons, Raimondo's motions (Docs. 46; 56) are **GRANTED in part and DENIED in part**.  Walden's retaliation claim, claims based on the geographical specialist position and 2020 Census, Title VII disparate treatment claim, and Fifth

Amendment claim are **DISMISSED** without prejudice.[8]  Walden's disparate impact claim may proceed against Raimondo.[9]

**SO ORDERED**, this 14th day of February, 2024.

S/ Marc T. Treadwell<br>
MARC T. TREADWELL, CHIEF JUDGE<br>
UNITED STATES DISTRICT COURT

---

[8] "[W]here a dismissal without prejudice has the effect of precluding the plaintiff from re-filing his claim due to the running of the statute of limitations, it is tantamount to a dismissal with prejudice." *Stephenson v. Doe*, 554 F. App'x 835, 837 (11th Cir. 2014) (citing *Justice v. United States*, 6 F.3d 1474, 1482 n.15 (11th Cir. 1993)).  It is possible that the statutes of limitations have run on Walden's dismissed claims.  The Eleventh Circuit has explained that "where the statute of limitations would preclude refiling," another opportunity to amend might be appropriate.  *Bilal v. Geo Care, LLC*, 981 F.3d 903, 919 (11th Cir. 2020).  Because Walden had four chances to plausibly allege these dismissed claims, no circumstances warrant providing Walden with another opportunity.  Docs. 1; 23; 40; 53.  Thus, his motion to file a fourth amended complaint (Doc. 58) is **DENIED**.

[9] Walden has not served any defendant other than Raimondo.  For Walden's Title VII claims, Raimondo is the proper party, *see* 42 U.S.C. § 2000e-16(c), and Raimondo does not challenge service.  Moreover, *Bivens* claims can only be asserted against the federal employees who committed the alleged conduct and not against federal agencies.  *Fed. Deposit Ins. Corp. v. Meyer*, 510 U.S. 471 (1994).  Even if Walden had served the Decennial Census, the DOC, the DOJ, and Attorney General Garland, the Court's rulings herein would necessitate their dismissal.  Accordingly, Raimondo is the sole defendant.